1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11    WANDA L. S.-N.,                          Case No.  EDCV 20-0772-RAO

12                        Plaintiff,

13            v.                               **MEMORANDUM OPINION AND ORDER**

14    ANDREW M. SAUL, Commissioner of
      Social Security,
15                        Defendant.

16

17    **I.    INTRODUCTION**

18            Plaintiff Wanda L. S.-N.[1] ("Plaintiff") challenges the Commissioner's denial

19    of her application for disability insurance benefits ("DIB") under Title II of the Social

20    Security Act.  For the reasons stated below, the decision of the Commissioner is

21    REVERSED, and the matter is REMANDED.

22    **II.   PROCEEDINGS BELOW**

23            On August 9, 2017, Plaintiff protectively filed a Title II application for DIB.

24    (Administrative Record ("AR") 9, 158-61.)  Her application was denied initially on

25

26    _____

      [1]  Plaintiff's name is partially redacted in compliance with Federal Rule of Civil
27    Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
      Administration and Case Management of the Judicial Conference of the United
28    States.

October 25, 2017 (AR 61-74), and upon reconsideration on February 1, 2018 (AR 75-87).  Plaintiff filed a request for hearing (AR 102), and a hearing was held on October 30, 2019 (AR 27-60).  Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert.  (AR 27-60.)  On December 3, 2019, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from September 12, 2016, the alleged onset date, through the date of the decision.  (AR 9-23.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)  Plaintiff filed this action on April 14, 2020.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 12, 2016, the alleged onset date.  (AR 11.)  At **step two**, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease with radiculitis, borderline cardiomegaly, asthma, fibromyalgia, obesity, history of lupus, somatic disorder, neurocognitive disorder, depression, and anxiety.  (AR 11.)  At **step three**, the ALJ found that Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AR 12.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform medium work . . . except . . . [Plaintiff] could lift and or carry fifty pounds occasionally and twenty-five pounds frequently; she could stand and or walk six hours in an eight-hour workday; and she could sit six hours in an eight-hour workday.  [Plaintiff] must avoid concentrated exposure to wetness, humidity, dusts, gases, and other pulmonary

irritants.  [Plaintiff] is limited to simple, routine tasks with no public contact and only occasional contact with coworkers and supervisors in a low stress job, defined as having only occasional decision-making duties and changes in the work setting.

(AR 15.)

At **step four**, the ALJ found that Plaintiff was unable to perform past relevant work as actually or generally performed.  (AR 21.)  At **step five**, based on Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.   (AR 21-22.)   Accordingly, the ALJ determined that, as to Plaintiff's claim for DIB, Plaintiff had not been under a disability from September 12, 2016, through the date of the decision.  (AR 22.)

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the

1  Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001)

2  (citations and internal quotations omitted).  "'Where evidence is susceptible to more

3  than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v.*

4  *Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*,

5  400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Social Sec. Admin.,* 466 F.3d

6  880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing

7  the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The

8  Court may review only "the reasons provided by the ALJ in the disability

9  determination and may not affirm the ALJ on a ground upon which he did not rely."

10  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340

11  F.3d 871, 874 (9th Cir. 2003)).

12  **IV.**   **DISCUSSION**

13  　　Plaintiff raises two issues for review:  (1) whether the ALJ properly considered

14  the medical evidence in assessing Plaintiff's RFC; and (2) whether the ALJ properly

15  considered Plaintiff's subjective statements and testimony.  (Joint Submission ("JS")

16  4.)  For the reasons below, the Court remands.

17  　　**A.**   **The ALJ Erred in Rejecting Plaintiff's Subjective Symptom**

18  　　　　**Testimony**

19  　　Plaintiff contends that the ALJ failed to properly consider her subjective

20  statements and testimony regarding her symptoms and limitations.   (JS 25.)

21  Specifically, Plaintiff argues that in evaluating her subjective symptoms and

22  functional limitations, the ALJ mischaracterized Plaintiff's activities of daily living.[2]

23  (JS 25.)  Plaintiff argues that her activities of daily living "are minimal at best, and

24  at most consistent with an ability to perform sedentary and/or light activities of daily

25  living for brief periods of time."  (JS 25.)  Plaintiff further argues that the ALJ's

26  remaining reason for discounting her subjective testimony, the lack of supporting

27  objective evidence, cannot form the sole basis for discounting symptom testimony.

28  ────────────────
[2] The Court addresses Plaintiff's claims in a different order than she presented.

(JS 27.)  The Commissioner contends that the ALJ gave sufficient reasons supported by the record for her assessment of Plaintiff's subjective allegations.  (JS 30-33.)

Where, as here, the claimant has presented evidence of an underlying impairment and the ALJ did not make a finding of malingering (*see* AR 16), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [his or her] . . . ability to perform work-related activities."  Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4.  In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . .; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.  The ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's statements.  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted).  The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "General findings are insufficient."  *Lester*, 81 F.3d at 834.

In a Function Report dated August 31, 2017, Plaintiff reported that she sleeps during the day due to lack of energy and sometimes goes to the grocery store and doctor's appointments.  (AR 196.)  She does not shower every day, due to depression.  (AR 196.)  She no longer cooks meals; she heats up frozen meals because she is "too weak."  (AR 197.)  She can load the dishwasher, vacuum, and do laundry, but in 15-minute increments due to fibromyalgia pain in her joints and muscles.  (AR 197-98.)  She no longer attends church in person because she lacks energy to get ready to go.  (AR 198.)  She shops for groceries once a week or once every two weeks for 30-40 minutes.  (AR 198.)  Her hobbies have diminished to watching TV and doing light cleaning.  (AR 199.)  When she can, she spends time with others on Facebook and

on the telephone.  (AR 199.)  She does not go out to socialize unless she feels well enough to go to church.  (AR 199-200.)  She can walk 15-20 minutes before needing to rest for 30 minutes.  (AR 200.)  She can sometimes follow written or spoken instructions, depending on her fatigue and "fibromyalgia fog in the brain."  (AR 200.)  She does not handle stress well.  (AR 201.)  She can handle changes in routine as long as she understands the change.  (AR 201.)  Some of her medications make her tired and dizzy.  (AR 202.)  In a 2018 Disability Report – Appeal, Plaintiff added that she has anxiety attacks when she leaves the house.  (AR 213.)

At the hearing on October 30, 2019, Plaintiff testified that she is not able to complete tasks, as she gets "very tired during the day and sometimes [she] sleep[s] five to six hours," and it is hard to remember things.  (AR 31.)  She stated that she is in a lot of physical, musculoskeletal pain.  (AR 31, 36.)  She only goes out for doctor's appointments or to the grocery store once or twice a month.  (AR 32.)  She can drive, but only to the grocery store, which is a short distance away.  (AR 33-34.)  She cannot work because of the pain and her inability to stay awake all day long.  (AR 38.)  She can sit for 30 minutes and then must get up due to the pain.  (AR 45.)  She lives alone, but she has friends that come over to assist her.  (AR 46.)  She eats TV dinners, can pay her bills, and get her mail.  (AR 46.)  She attends church online.  (AR 47.)  She takes care of two indoor Chihuahuas.  (AR 32.)

The ALJ rejected Plaintiff's subjective testimony because (1) her daily activities were inconsistent with her allegations of disabling symptoms and limitations; and (2) the objective medical evidence did not reflect the degree of limitations alleged by Plaintiff.  (AR 16-18.)

Regarding Plaintiff's daily activities, the ALJ noted that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment," and found that Plaintiff's "ability to participate in such activities is inconsistent with her allegations of functional limitations."  (AR 18.)  The ALJ noted

that Plaintiff could attend to her personal hygiene, prepare simple meals, complete light household chores, drive a vehicle, shop in stores, manage her finances, navigate a computer, talk on the phone, and display sufficient concentration and attention to follow television programs.  (AR 18.)

Generally speaking, an ALJ may use inconsistencies between a claimant's testimony and his or her other statements, conduct, and daily activities as a basis for discounting his or her testimony.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *see also Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) ("While transferability of skills to a work setting is one way in which an ALJ may consider a claimant's daily activities, an ALJ may also discount claimant testimony where reported daily activities contradict the claimant's alleged extent of her limitations."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount claimant's credibility).  In this case, however, this was not a convincing reason for discounting Plaintiff's testimony.

The Court agrees with Plaintiff that the ALJ mischaracterized Plaintiff's activities of daily living.  The ALJ appeared to ignore evidence that Plaintiff did not shower daily, only prepared frozen meals, completed light household chores in 15 minute increments, drove for short distances and infrequently, shopped for groceries once or twice a month for 30-40 minutes at a time, and attended church online.  The ALJ does not explain how Plaintiff's ability to perform these minimal activities around her daytime sleep schedule establishes that her activities are inconsistent with her subjective testimony or that she could perform medium work eight hours a day, five days a week.  Further, the ALJ failed to address how Plaintiff's limited daily activities would transfer to a workplace setting.  *See Orn*, 495 F.3d at 639 ("The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility

1   determination.") (internal quotation marks omitted).  Accordingly, the record does
2   not support the ALJ's finding that Plaintiff's activities were inconsistent with her
3   symptom testimony.  *See Rawa v. Colvin*, 672 F. App'x 664, 666 (9th Cir. 2016)
4   (finding that where "the ALJ omitted a number of salient and dispositive facts and
5   details when recounting [claimant's] activity level," including the fact that claimant
6   drove only a couple of times per week and the fact that she experienced pain while
7   engaged in certain activities, "[s]uch an inaccurate representation of the record can
8   not constitute a specific, clear, and convincing reason for rejecting" claimant's
9   subjective symptom testimony).

10      The Commissioner highlights two reasons for discounting Plaintiff's
11  subjective testimony that were not relied upon by the ALJ.  First, the Commissioner
12  argues that Plaintiff admitted to other activities, such as taking classes and
13  participating in "lots of [other] church activities."  (JS 32; AR 259, 265, 282, 306.)
14  Second, the Commissioner acknowledges that Plaintiff's activities "did not
15  necessarily support Plaintiff's ability to perform medium work and Plaintiff may
16  have had some difficulties," but argues that Plaintiff's activities failed to establish
17  that Plaintiff had significant functional limitations.  (JS 32).  The Court is constrained
18  to review the reasons asserted by the ALJ.  *See Connett*, 340 F.3d at 874.

19      Finally, the ALJ discounted Plaintiff's subjective testimony because "the
20  medical evidence, signs and findings upon objective examination simply do not
21  reflect the degree of limitations" alleged by Plaintiff.  (AR 16.)  This reason cannot
22  form the sole basis for discounting symptom testimony.  *See Burch*, 400 F.3d at 681
23  ("Although lack of medical evidence cannot form the sole basis for discounting pain
24  testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Light*,
25  119 F.3d at 792 ("[A] finding that the claimant lacks credibility cannot be premised
26  wholly on a lack of medical support for the severity of [her] pain.").  As this is the
27  only remaining reason the ALJ provided for discounting Plaintiff's subjective
28  testimony, this reason alone is not sufficient.

Because the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's subjective testimony, remand is warranted on this issue.

## B.     The Court Declines to Address Plaintiff's Remaining Issue

Having found that remand is warranted, the Court declines to address Plaintiff's remaining issue. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## C.     Remand for Further Administrative Proceedings

Plaintiff contends that the ALJ's decision should be vacated and the matter remanded for further proceedings. (JS 33.)  The Commissioner agrees that, should the Court find reversible error, it should remand for further administrative proceedings.  (JS 33 at n.12.)

The Court agrees with the parties that remand for further administrative proceedings is appropriate, as further administrative review could remedy the ALJ's errors. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances).[3]  The Court finds that the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony.  On remand, the

---

[3] Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted).  Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

ALJ shall reassess Plaintiff's subjective testimony. The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five to determine what work, if any, Plaintiff is capable of performing. This order does not preclude the ALJ from considering, on remand, any other arguments raised by Plaintiff.

## V.    CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  February 11, 2021

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**